**Opinion filed July 15, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00266-CV

_____

## PETER KLASSEN, Appellant

## V.

## GAINES COUNTY, TEXAS, AND GAINES COUNTY DEPUTY SHERIFFS KEN KETRON AND CLINT LOW, Appellees

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 19-08-18199**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order granting a Rule 91a motion to dismiss and alternative motion for summary judgment. *See* TEX. R. CIV. P. 91a. Peter Klassen, Appellant, sued Appellees Gaines County and two Gaines County deputy sheriffs, Ken Ketron and Clint Low (collectively referred to as Appellees).[1] Klassen alleged that Deputy Ketron and Deputy Low used excessive force against him, resulting in

---

[1]Klassen also sued Wallach Construction/PB Materials Holding Inc. as well as Tyler Wallach, Johnny Neufeld, and Walter Ziemann personally. However, they are not parties to this appeal, and their claims are not relevant to our analysis of the issues presently before us. Therefore, we focus solely on the claims against Gaines County, Deputy Low, and Deputy Ketron.

serious bodily injury. Appellees filed a Rule 91(a) motion to dismiss and alternative motion for summary judgment, which the trial court granted.

On appeal, Klassen contends that (1) the trial court erred in granting Appellees' motion because there was a basis in law and fact for his § 1983 claim, (2) the trial court erred in ruling that no excessive force was used against him by Appellees, (3) the trial court erred in failing to consider his expert's opinion, and (4) the trial court erred in granting Appellees' motion to dismiss because Gaines County is responsible for the deprivation of Appellant's rights. We affirm.

*Background Facts*

Deputy Ketron and Deputy Low responded to 9-1-1 calls concerning an escalating dispute between Klassen and Tyler Wallach, Johnny Neufeld, and Walter Ziemann—three men from a construction company with whom Klassen entered into a business transaction. When Deputies Low and Ketron arrived at the scene, the three men gave the deputies their account of what had happened, informing the deputies that Klassen had assaulted them and threatened to go get a gun. As Klassen exited the office, the deputies instructed Klassen to put his hands up, turn around, and get on the ground. Klassen placed his hands in the air, turned around, and knelt on the ground. Deputy Ketron then attempted to move Klassen into a prone position, but Klassen placed his hands on the ground as he was falling down. Officer Ketron then used his body weight against Klassen to move Klassen into a prone position. This caused Klassen to strike his chin on the ground, knocking out several teeth and breaking his jaw.[2]

Klassen sued Appellees under various state and federal tort causes of action. Gaines County filed a motion to dismiss Deputies Ketron and Low from Klassen's state law claims under the election of remedies provision of the Texas Tort

---

[2]We also note that, after the deputies observed Appellant's injury, they called EMS to come check on Klassen, even though Klassen stated that he did not need medical assistance.

Claims Act (TTCA), which the trial court granted. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (West 2019). Appellees also filed a motion for summary judgment, contending that the remaining federal claims against Deputies Ketron and Low and state law claims against Gaines County should be dismissed. The trial court granted the motion, leaving only the federal claims to remain against Gaines County. Thereafter, Klassen filed a second amended petition against Gaines County, Deputy Low, and Deputy Ketron. This petition was virtually the same as Klassen's original and first amended petitions, except that Klassen also alleged that dismissing Deputies Ketron and Low was "legally incorrect" and attached as exhibits transcripts of the 9-1-1 calls, a portion of the summary judgment hearing, and an expert's opinion that the force was indeed excessive. In response to Klassen's second amended petition, Appellees filed a Rule 91a motion to dismiss and alternative motion for summary judgment. The trial court granted the motion, dismissing with prejudice all remaining claims against Appellees. This appeal followed.

*Standard of review*

In order to determine the appropriate standard of review, we first note the evidentiary limitations imposed on both Rule 91a motions and motions for summary judgment. Generally, Rule 91a provides for the dismissal of baseless causes of action that have no basis in law or fact on motion and without evidence. TEX. R. CIV. P. 91a.1, a.6. The trial court must decide a Rule 91a motion based *solely* on the pleading of the cause of action, together with any exhibits permitted by Rule 59. *Id.* R. 91a.6; *see* TEX. R. CIV. P. 59. In contrast, a court's duty in ruling on a motion for summary judgment is to "examine the *entire record* in the light most favorable to the nonmovant." *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)).

Here, Appellees filed a Rule 91a motion to dismiss that alternatively requested summary judgment on the same grounds. The trial court's order granting Appellees'

motion expressly stated, "[a]fter examining the pleadings, the Court's file and previous holdings, of which the Court took judicial notice, the motions before the Court, including any responses thereto, together with applicable authorities, the Court determined that Defendants Gaines County, Texas, Ken Ketron, and Clint Low are entitled to the relief requested." This statement clearly indicates that the trial court considered evidence beyond the pleadings, which it could only do if it granted summary judgment, not a Rule 91a motion. *See* TEX. R. CIV. P. 91a.6. Accordingly, we treat the trial court's order as granting Appellees' alternative motion for summary judgment.

"We review the trial court's grant of summary judgment de novo." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). However, a trial court's decision to exclude or admit summary judgment evidence is reviewed for an abuse of discretion. *Id.* (citing *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017)). An abuse of discretion exists only when the court's decision is made without reference to any guiding rules and principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). "An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). When the trial court's order does not specify the grounds for its summary judgment, we will affirm it if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216.

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative

4

defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller*, 168 S.W.3d at 816. If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *City of Keller*, 168 S.W.3d at 824.

*Analysis*

*I.A.  Relevance of Rule 91a Contentions*

In his first issue on appeal, Klassen contends that the trial court erred in granting Appellees' Rule 91a motion to dismiss because there was both a basis in law and fact for his claims against Gaines County, Deputy Ketron and Deputy Low. With the exception of the following TTCA discussion, the entirety of Klassen's first issue focuses on the pleading requirements under a Rule 91a motion to dismiss. However, because we interpret the court's order as granting the defendant's alterative motion for summary judgment, whether Klassen's second amended petition sufficiently demonstrated a basis in law and fact under a Rule 91a motion is irrelevant to our analysis.

*I.B.  Texas Tort Claims Act*

Klassen also asserts in his first issue that the trial court erred in dismissing the case based on the TTCA because the Act does not apply to Klassen's federal excessive force claim. While Klassen is correct in stating that the TTCA does not

5

apply to federal claims, he misinterprets the trial court's holdings. The trial court initially held that the election of remedies provision of the TTCA *only* bars Klassen's state law claims against Deputies Ketron and Low. As such, the trial court ordered that "all *state law* claims filed against Defendants Ken Ketron and Clint Low be dismissed with prejudice pursuant to Section 101.106(e) of the Texas Civil Practice[] and Remedies Code" (emphasis added). Moreover, there is no evidence that the trial court dismissed Klassen's federal claims against Gaines County based on the governmental immunity granted to it by the TTCA.[3] Klassen's federal claims remained wholly unaffected by the court's application of the TTCA. We overrule Klassen's first issue.

### II.A. *Excessive Force Claim*

In his second issue on appeal, Klassen contends that he sufficiently alleged and proved a constitutional violation of his right to be free from excessive force. While Klassen also phrases his second issue to primarily address Appellees' Rule 91a motion instead of their alternative motion for summary judgment, Klassen expressly asserts that "[t]he trial court erred when it ruled that there was not excessive force by the Appellees." The only instance in which the trial court expressly held that the amount of force used was reasonable and not excessive under the circumstances was in the first summary judgment hearing. Thus, we interpret Klassen's second issue as attacking the trial court's initial ruling that the force was not excessive.

Generally, a party may bring an excessive-force claim under the Fourth or Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989).

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly

---

[3]Because Klassen does not contend on appeal that the trial court erred in dismissing any or all of the state law claims against Appellees, we decline to discuss whether the TTCA properly bars Klassen's state law claims. Although, a brief review of the TTCA plainly shows that Klassen's state law claims were properly dismissed. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.057, .106(e) (West 2019).

characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person.

*Id.* (alterations in original) (quoting U.S. CONST. amend IV). To establish a Fourth Amendment excessive-force claim, a plaintiff must "show that [he] suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Here, the parties primarily dispute the third element. Accordingly, we focus our analysis on whether Appellees met their summary judgment burden to conclusively prove that the force used was not objectively unreasonable.

Determining whether the force used was objectively unreasonable "'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Graham*, 490 U.S. at 396). Although this determination requires careful attention to the facts and circumstances of the case, "when facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, [a court] can hold that an officer acted reasonably as a matter of law." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 412 (5th Cir. 2009); *see Scott v. Harris*, 550 U.S. 372, 381, n.8 (2007) ("At the summary judgment stage, . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record,* . . . the reasonableness of [the defendant's] actions . . . is a pure question of law." ).

Klassen contends that the deputies brutally attacked him, threw him "to the ground violently," and then "jumped on his back and handcuffed him." In these types of cases, we are usually required to adopt the plaintiff's version of the facts.

*See Scott*, 550 U.S. at 380. However, this general rule may change if the record contains video evidence capturing the events. *See id.* When the record contains video evidence of the events and "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Here, the video evidence plainly shows that, after the deputies ordered Klassen to get on the ground, Klassen began to kneel. Deputy Ketron placed his hands on Klassen's back to move Klassen into a prone position. As Klassen was moving forward, Klassen placed his hands out in front of him. Deputy Ketron then used his body weight to secure Klassen on the ground and handcuff him. No reasonable person could, after viewing the video recording of the incident, find that Deputy Ketron threw Klassen to the ground or jumped on Klassen's back to handcuff him. Therefore, we "view[] the facts in the light depicted by the videotape." *Id.* at 381. In this light, we cannot hold that Deputy Ketron's conduct was objectively unreasonable.

Moreover, Deputies Ketron and Low arrived at the scene after being advised that Klassen had assaulted other individuals by hitting them and throwing chairs at them, had threatened to get a gun, and had prevented some of the other individuals from leaving for a period of time. We do not consider whether Klassen actually had a gun on his person, or even threatened to get a gun, because the reasonableness of an officer's conduct is determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Lytle*, 560 F.3d at 412 (quoting *Graham*, 490 U.S. at 396). From the deputies' viewpoint, it was objectively reasonable for them to assume that Klassen may have been armed and dangerous when approaching him. Finally, Deputy Ketron only used his body weight against Klassen for just enough time to handcuff him, lasting only a few seconds. Based on

the record, we conclude that Appellees conclusively proved that Deputy Ketron's conduct was neither objectively unreasonable nor excessive.

*II.B. Qualified Immunity*

Regardless, the trial court did not err in dismissing Deputies Ketron and Low because Klassen failed to rebut Appellees' assertion of qualified immunity. "[O]fficers are entitled to qualified immunity under [42 U.S.C.] § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 556 U.S. 658, 664 (2012)). Generally, "'[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof,' shifting it to the plaintiff to show that the defense is not available." *Valencia v. Davis*, 836 F. App'x 292, 297 (5th Cir. 2020) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). To rebut the defense, a plaintiff must establish "that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.* (quoting *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016)).

Assuming *arguendo* that the deputies violated a federal statutory or constitutional right, Klassen does not cite to any relevant case law indicating that the law was clearly established with regard to whether the conduct at issue was unlawful. Under the second prong of this test, it is the plaintiff's burden to find a case in his favor that "defines the contours of the right in question with a high degree of particularity." *Id.* (quoting *Delaughter v. Woodall*, 909 F.3d 130, 139 (5th Cir. 2018)). "For example, the plaintiff's burden at step two is not satisfied by broadly stating that 'citizens are protected against unjustified, excessive police force.'" *Id.* (quoting *Cass*, 814 F.3d at 732); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("The Court of Appeals should have asked whether clearly

established law prohibited the officers from stopping and taking down a man in these circumstances[,] [i]nstead [of] saying only that the 'right to be free of excessive force' was clearly established.").

Klassen relies upon *Harris County v. Nagel* for the assertion that "cases clearly established that officers use excessive force if they apply significant pressure to a person who is hogtied." 349 S.W.3d 769, 785 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). However, *Nagel* and the cases of other jurisdictions relied upon by *Nagel* are patently distinguishable from the facts before us. *See generally id.* Here, Klassen was not hogtied, incapacitated, or in any way subdued before Deputy Ketron used his body weight to place Klassen in a prone position. Once Deputy Ketron was able to put handcuffs on Klassen, the use of force ceased. Moreover, the deputies had reason to believe that Klassen had just been involved in an assault, would not let certain individuals leave the premises, and was potentially armed. *See Valencia*, 836 F. App'x at 297 (holding that the defendant failed to show clearly established law that prohibited an officer's use of force where the defendant was unrestrained at the time of force and the officers were informed that the defendant had been involved in a bar fight and was possibly armed). Absent any authority clearly indicating that such facts are unlawful, Klassen fails to rebut the second prong of the qualified immunity test, and we hold that the trial court did not err in dismissing all claims against Deputies Ketron and Low. We overrule Klassen's second issue on appeal.

### III. Exclusion of Evidence

In his third issue on appeal, Klassen contends that the trial court erred when it did not consider his expert's report/opinion, which Klassen contends would have created a material fact issue as to whether Deputy Ketron's use of force was excessive or objectively unreasonable. We disagree.

10

Klassen did not offer the opinion of his expert as summary judgment evidence. The expert's opinion was not attached to Klassen's response to Appellees' motion for summary judgment. *See* TEX. R. CIV. P. 166a(c). Therefore, any failure by the trial court to consider the opinion of Klassen's expert as summary judgment evidence was not erroneous. To the extent that Klassen contends the trial court erred in failing to consider the expert's opinion when the court considered the Rule 91a motion, the trial court's failure to consider such evidence was proper. Pursuant to Rule 91a.6, a court "may not consider" such evidence when ruling on a Rule 91a motion. TEX. R. CIV. P. 91a.6. We overrule Klassen's third issue.

### IV. Failure to Train

In his fourth issue on appeal, Klassen contends that the trial court erred in granting the defendant's Rule 91a motion and alternative motion for summary judgment in favor of defendant Gaines County because the evidence supports a finding that Gaines County failed to adequately train Deputies Ketron and Low with regard to the use of force. We disagree.

Klassen correctly notes that, although qualified immunity may shield Deputies Ketron and Low from liability, a state or municipality enjoys no protection based on the qualified immunity of its officials or employees; the doctrine of qualified immunity only applies to "individuals." *See Alberti v. Sheriff of Harris Cty., Tex.*, 978 F.2d 893, 895 (5th Cir. 1992). Thus, a plaintiff may assert liability against a county for a § 1983 claim based on, among other things, a custom or policy of inadequate training, supervision, discipline, screening, or hiring. *Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (adopted policy); *Johnson v. Moore, III*, 958 F.2d 92, 94 (5th Cir. 1992) (persistent or widespread practice); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–87 (1989) (inadequate training or failure to train); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81

11

(1986) (actions or decisions by a municipal policymaker with "final policymaking authority")). However, where there is no constitutional violation on the part of the municipality's officials, the municipality cannot be held liable for the plaintiff's injury. *See Cook v. Hopkins*, 795 Fed. App'x 906, 917–18 (5th Cir. 2019) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)). As we concluded earlier, the trial court properly ruled that the use of force by Deputy Ketron was not excessive. Because Klassen suffered no constitutional injury at the hands of Appellees, Gaines County cannot be held liable for any failure to train its deputies. *See id.*

Even assuming *arguendo* that Klassen suffered a constitutional injury, when viewed under the light most favorable to Klassen, the record is devoid of any evidence that would support the existence of any of the elements of a failure-to-train claim. *See* TEX. R. CIV. P. 166a(i); *Hutcheson v. Dallas Cty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (outlining the elements of a failure-to-train claim). We overrule Klassen's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

July 15, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

12